IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| BRIAN NICHOLS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-3611 RDB |
| | ) | |
| CARRIAGE HOUSE CONDIMINIUMS | ) | |
| AT PERRY HALL FARMS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Plaintiff, Brian Nichols, by and through his undersigned counsel, for his opposition to Defendants' Motion to Dismiss or in the Alternative for Summary Judgment hereby states as follows:

STATEMENT OF MATERIAL FACTS

Plaintiff purchased a condominium from Carriage House and Residential Realty located at 9700 Red Wing Drive, Perry Hall, Maryland, in 2001. In or about October, 2001, Plaintiff made his first request to modify his property to accommodate his disability. Exhibit 1. On November 16, 2001, Defendants responded to Plaintiff's request by asking to meet with Plaintiff to discuss his accommodation needs. Exhibit 2.[1] In or about April 2005, Plaintiff requested approval for an architectural change, specifically to expand his driveway, for a handi-cap accessibility. Exhibit 3. On June 28, 2005, Defendants approved the driveway extension provided Plaintiff obtain signatures from 75% of the community. Exhibit 4. Plaintiff obtained the necessary signatures. In

---

[1] Defendant have asserted at various stages of the ongoing dispute and litigation that they never knew that Plaintiff had any disability or had ever requested any accommodations. These first two exhibits clearly establish that Plaintiff's first accommodation request and Defendants' first response thereto occurred almost 14 years ago.

March 2006, Plaintiff underwent a four-part, ankle surgery that severely limited his ability to walk and participate in activities of everyday life. Plaintiff's recovery and rehabilitation from his March 2006 ankle surgery extended well into 2008. In December 2007, Plaintiff was finally able to arrange commencement of the construction of his approved, handicap driveway extension. The driveway was completed in January 2008. In January 2008, Plaintiff received a cease and desist notice, by and through Carriage House and Residential Realty's attorneys, to halt the installment of his approved, handi-cap driveway extension, apparently due to Plaintiff's non-compliance with a six-month commencement requirement; a requirement of which Plaintiff was not made aware at anytime during the request or approval stages. On or about May 18, 2010, Plaintiff received a court ordered mandate to remove the entirety of his handi-cap driveway extension; confusingly, not just the portion that extended beyond any approved width; and Plaintiff complied by the end of May, incurring all costs for the removal of the entire handi-cap parking and accessibility area.

On October 13, 2010, Plaintiff formally requested, yet again, approval for a handi-cap driveway extension from Carriage House and Residential Realty. Exhibit 5. In a letter dated November 17, 2010, Attorney Bruce Brown of The Law Offices of Rosen Hoover P.A., ("Rosen Hoover"), informed Plaintiff that Rosen Hoover was representing Carriage House, and that in response to Plaintiff's October 13, 2010 request for an exterior alternation, Plaintiff's request was denied. Exhibit 6. The November 17, 2010 letter stated, "while you have not ever requested a reasonable modification due to your claimed handicap,[2] the Condominium has decided to treat your cover letter dated October 13, 2010 and accompanying Exterior Alteration Application as a request for a reasonable modification of the driveway adjacent to your Unit under the Fair Housing Act." See. Ex. 6. In the November 17, 2010 letter, Defendant Carriage House, by and through its

---

[2] Defendants obviously knew of Plaintiff's request for an accommodation for disability related reasons in November, 2001, some 9 years prior to this letter.

attorney, went on to request that Plaintiff provide "reliable disability related information to prove [his] disability and the nexus between it and the need for the requested modification," despite Defendant's longtime knowledge of Plaintiff's disability.  See. Ex. 6.  Defendant Carriage House stated in the November 17, 2010 letter, that once adequate information was received, reviewed and authenticated, supporting Plaintiff's claims of disabilities, Defendant Carriage House would consider approval of the handi-cap extension to a maximum of one hundred and fifty-six inches. Defendant Carriage House stated that one hundred and fifty-six inches was the "width of a standard parking space under the Americans With Disability Act Accessibility Guidelines;" ("ADAAG") and was the maximum size of a parking space that it would approve, regardless of Plaintiff's actual needs.  See Ex. 6.

On December 13, 2010 and January 25, 2011 Plaintiff's treating physicians provided letters to Plaintiff identifying his disabilities previously described herein and stating that Plaintiff required an accommodation, including approval of a driveway extension and enlarged parking pad to allow him to continue to function in his home environment.  Exhibits 7&8.  Plaintiff shared these letters with Defendants.

On June 10, 2014, Plaintiff sent a letter to Defendant Residential Realty requesting that he be provided "handicap accessibility."  Exhibit 9.  On June 30, 3014, Defendants responded to Plaintiff's letter by approving his request, subject to the terms and conditions laid out in the November 17, 2010 letter from Rosen Hoover limiting the size of Plaintiff's handicap parking space to 156 inches. Exhibit 10.  Plaintiff requires a handicap parking space larger than 156 inches and requires other reasonable modifications to his property as identified in his October 13, 2010 request that was denied.  In actual fact, because of the size limitation in the November 17, 2010 letter, Defendants' June 30 letter was yet another denial of Plaintiff's request for a reasonable

accommodation and therefore a violation of both federal and state law. Defendants have both specifically denied Plaintiff's most recent request for an accommodation and have continuously denied Plaintiff's ongoing requests for an accommodation since at least November, 2010 and likely substantially longer than that. As of today, Plaintiff is still without a handicap accessible parking space and without a handicap accessible aisle.

STANDARD OF REVIEW

A.  Standard of Review for summary judgment, Rule 56

Summary judgment may be granted if no genuine issues of material fact remain to be determined at trial. Fed.R.Civ.P. 56; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying [with specificity] those portions of [the opposing party's case] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. When considering the motion, the court will view all facts and make all reasonable inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–2514; *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24, and *cert. denied,* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Mere speculation by the non-moving party cannot stave off a properly supported motion for summary judgment. *See Beale v. Hardy,* 769 F.2d 213, 214 (4th

Cir.1985). In order to withstand the motion for summary judgment, the nonmoving party must produce sufficient evidence in the form of depositions, affidavits or other documentation which "demonstrate that a triable issue of fact exists" for trial. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), cert. denied, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). *See also Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; Fed.R.Civ.P. 56(e).

A court's summary judgment inquiry "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson,* 477 U.S. at 252. In this case, considering the facts in the light most favorable to the non-moving party, Plaintiff presents numerous issues upon which reasonable jurors could find by a preponderance of the evidence that Plaintiff is entitled to a verdict. Defendant is not entitled to judgment as a matter of law and Defendant's Motion should be denied.

### B.  Standard for review for motion to dismiss, Rule 12(b)(6)

In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see Leatherman v. Tarrant Cty; Narcotics and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236, 94 S.Ct. 1683; *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.Cir.2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. *Trudeau v. Federal Trade*

*Comm'n*, 456 F.3d 178, 193 (D.C.Cir.2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

When reviewing a 12(b)(6) motion to dismiss, the court must presume all of the allegations to be true, must resolve all doubts and inferences in favor of plaintiff and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir.1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In evaluating Defendant's Motion to Dismiss, Plaintiff is entitled to the truth of all of his well plead allegations.  At a minimum, Plaintiff has stated facts sufficient to support his causes of action, liability, causation and damages.

ARGUMENT

I. Plaintiff's claims are not barred by any applicable statute of limitation.

The Fair Housing Act, at 42 U.S.C.A. 3613(a)(1)[3] provides "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." In this case, the facts clearly establish that the occurrence of the discriminatory practice has been continuous since at least 2010 and likely much longer. As recently as June 10, 2014, Plaintiff requested that Defendants "Please give me my handi-cap accessibilities." Ex. 9.  In response, on June 30, 2014, Defendants responded that Plaintiff's request would be considered when Plaintiff submitted an architectural change request consistent with the November 17, 2010 letter from Rosen and Hoover, Defendants' attorneys at that time and currently.  Ex. 10.  The November 17, 2010 was sent in response to Plaintiff's October 13, 2010 request for approval to install a "Handi-

---

[3] Plaintiff's claim under Md. Code Ann. [St. Gov.] §20-706 follows the exact same facts and legal analysis.

cap driveway in front of my house." See Ex. 5. Plaintiff attached a drawing to that request which was substantially similar to his original request to install a handicap accessible driveway and walkway that was approved in April, 2005. See Ex. 3.

Defendants first argue that Plaintiff's June 10, 2014 letter was not a proper request for an accommodation. Confusingly, Defendants then argue that even though Plaintiff never asked for an accommodation, the June 30 letter is an approval of his request for an accommodation, subject to submission of an application and Plaintiff's offer to pay for the installation. The June 30 letter makes no mention of a requirement that Plaintiff for his new driveway, and considering the circumstances that Plaintiff had already installed and was forced to remove his new driveway as well as for Plaintiff to pay nearly $70,000 for Defendants' attorneys' fees, this is clearly a disputed issue. Further, the November 17, 2010 and by extension, the June 30, 2014 letter only approves a driveway that is limited to 156 inches and specifically denies anything larger, regardless of Plaintiff's actual needs. Plaintiff's original driveway extension that was approved and ultimately forcibly removed was 216 inches wide and 144 inches long. Exhibit 11. While the minimum handicapped parking width is 156 inches[4], Plaintiff is actually entitled to any reasonable accommodation, not specifically limited to the minimum size required by the law. Defendants argue that the June 30 letter was not a preemptive denial of Plaintiff's request (which Defendants don't even acknowledge occurred in their pleading). However, limiting the size of Plaintiff's driveway modification before Plaintiff formally submitted an application is exactly a preemptive denial and likely exactly the blatant disability discrimination that Plaintiff complains of in this

---

[4] The 156 inch driveway extension that Defendants have "approved" is taken from the ADA Accessibility Guidelines, 4.6.3 (96 inches for a parking space) and 4.6.6 (60 inches for an aisle). Exhibit 12. These guidelines apply to buildings and facilities and were attached to Defendants' November 17, 2010 denial of Plaintiff's request. These guidelines say that the parking space and aisle must be "at least" 156 inches. 156 is by no means the only dimension that could be acceptable. While these guidelines are not specifically for residential property, Plaintiff accepts that he is entitled to at least 156 for a parking space and aisle.

case. Considering that Plaintiff's original approved driveway extension was substantially larger than 156 inches, Defendants' failure to follow the law must be fully examined in meaningful litigation, not dispensed of at this early stage without any discovery. See Ex. 11.

II. <u>Plaintiff's offer to pay for his driveway modifications is not relevant at this time.</u>

Defendants argue that because Plaintiff has never offered to pay for his own driveway modifications, his case should be dismissed. Plaintiff has already paid for his driveway modifications and the removal of same himself once. At this point, the costs associated with the installation, removal and the as yet to be approved and completed modifications of Plaintiff's driveway are part of his measure of damages. The Fair Housing Act states " (1) In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages." This Court and the jury, at trial, have the discretion to award damages, including the cost of installing the driveway. At a bare minimum, this are substantial questions of material fact that cannot be decided at this time.

## CONCLUSION

For all of the reasons stated herein, this Court should deny Defendants' Motion to Dismiss or on the Alternative for Summary Judgment.

WHEREFORE, Plaintiff respectfully requests that this Court

A. Deny Defendants Motion to Dismiss or in the Alternative for Summary Judgment;

B. Award Plaintiff all of his costs and expenses, including reasonable attorneys' fees for defending this Motion; and

C. Grant such other and further relief as this Court deems appropriate based on the facts and circumstances of this case.

        Respectfully Submitted,

        _____/s/_____
        Neil S. Hyman, Esquire
        Bar No. 15158
        Law Office of Neil S. Hyman, LLC
        4416 East West Highway, Suite 400
        Bethesda, Maryland 20814
        301-841-7105 (phone)
        301-986-1301 (fax)
        neil@neilhymanlaw.com
        *Counsel for Plaintiff*

Dated:  April 28, 2015